No. 03-098

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 393

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

SARA CHRISTINA BAKER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                      In and for the County of Cascade, Cause No. BDC 2002-294
                      The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Lawrence A. LaFountain, Deputy Public Defender, Great Falls, Montana
           Jane M. Berger, Attorney at Law, Great Falls, Montana

      For Respondent:

           Honorable Mike McGrath, Montana Attorney General, Mark W. Mattioli,
           Assistant Attorney General, Helena, Montana; Brant Light, Cascade County
           Attorney, Marty Judnich, Deputy County Attorney, Great Falls, Montana

                              Submitted on Briefs:  January 27, 2004

                                    Decided:  December 30, 2004

Filed:

_____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Sara Baker (Baker) appeals her misdemeanor conviction of attempting to obstruct a peace officer.  The verdict was reached by a jury in the District Court of the Eighth Judicial District, Cascade County.  We affirm.

## ISSUES

¶2     A restatement of the issues before this Court is:

¶3     Did the District Court err when it denied Baker's pre-trial Motion to Suppress and Dismiss?

¶4     Did the District Court abuse its discretion by admitting evidence challenged by Baker?

¶5     Did the District Court fail to fully and fairly instruct the jury on the law applicable to the case?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6     On April 10, 2002, officers with the Great Falls Police Department drug task force were dispatched to execute a "high risk" search warrant on Dustin Steele's residence. Detectives had received information that Steele, a suspected drug dealer, was extremely dangerous, was heavily using drugs including methamphetamine and cocaine, had been firing weapons inside of his house, and may have supplied weapons that had been used in a drive-by shooting.  According to the police, they had information that Steele was known to fire a gun inside his residence.

¶7     On the morning of April 10, while the officers watched Steele's residence, an officer phoned Steele and asked him to meet at a restaurant to discuss a criminal investigation in

2

which Steele's name had been mentioned. Very shortly thereafter, Steele left his residence and ran down an alley when he saw officers approaching. The officers apprehended Steele, who was armed with two handguns, after chasing him on foot. As Steele was trying to remove a gun from his waistband during a struggle with the officers, Steele accidently shot himself in the leg. Once Steele was stabilized and removed from the scene, the officers returned to their staging area near Steele's home to prepare to search Steele's residence pursuant to the search warrant.

¶8     One of the detectives testified that the officers did not know whether anyone else was inside Steele's residence. Still wearing their protective gear (bullet-proof vests, helmets, goggles), they briskly approached Steele's home armed with highly-visible machine guns and shotguns. This detective also testified that as they approached Steele's house, he noticed a woman, later identified as Baker, standing on a nearby porch using a telephone.

¶9     After entering and searching Steele's residence and confiscating drugs and drug-related paraphernalia, the officer noticed an uncollected message on Steele's answering machine. He testified that collecting such messages was a common part of drug-related searches. The message was from Baker and stated:

> Hey Dustin, this is your neighbor, Sara, and we've got SWAT down here on the corner. If you're up, listen and peek out your window. I don't know what it's for but it might be in your best interests to look outside. Bye.

¶10    The officers confiscated the tape and one of them walked to Baker's house, approximately thirty feet from Steele's, and confronted her with the message. She admitted that she had left it, stated that she did not know why she had done it, and revealed that she

did not like Steele and thought he was a drug dealer. The officer then arrested Baker for misdemeanor obstruction of a peace officer in violation of § 45-7-302, MCA. The charge was later changed to attempted obstruction.

¶11 Baker was tried in Great Falls, Cascade County, Justice Court on July 11, 2002, and found guilty by a jury. She appealed to the Eighth Judicial District Court that same day. The trial was then scheduled for October 21, 2002. On October 17, 2002, Baker filed a Motion to Suppress and Dismiss. The District Court denied the Motion. The jury found Baker guilty and the District Court sentenced her to six months at the Cascade County Detention Center with all but four days suspended. She was also sentenced to pay a $500.00 fine with $250.00 suspended. She appeals the District Court's denial of her Motion to Suppress and Dismiss and the court's admission of certain evidence. She also challenges the court's jury instructions.

## STANDARD OF REVIEW

¶12 The grant or denial of a pretrial motion to dismiss in a criminal case is a question of law. This Court reviews conclusions of law to determine if they are correct. *State v. Morgan*, 1998 MT 268, ¶ 17, 291 Mont. 347, ¶ 17, 968 P.2d 1120, ¶ 17 (citations omitted). Furthermore, the standard of review of sufficiency of evidence to sustain a conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McCarthy*, 2004 MT 312, ¶ 46, ___ Mont. ___, ¶ 46, 101 P.3d 288, ¶ 46 (citation omitted).

4

¶13    We review a district court's evidentiary rulings for an abuse of discretion.  The district court has broad discretion to determine if evidence is admissible.  Thus, absent an abuse of that discretion, this Court will not overturn the district court's determination. *Finstad v. W.R. Grace & Co.*, 2000 MT 228, ¶ 43, 301 Mont. 240, ¶ 43, 8 P.3d 778, ¶ 43. The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.  *Kiely Constr., L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 92, 312 Mont. 52, ¶ 92, 57 P.3d 836, ¶ 92 (citation omitted).

¶14    We review jury instructions in a criminal case to determine whether the instruction fully and fairly instructed the jury on the law applicable to the case.  The district court has broad discretion when instructing the jury and therefore reversible error will occur only if the jury instructions prejudicially affect the defendant's substantial rights.  *State v. Gray*, 2004 MT 347, ¶ 12, ___ Mont. ___, ¶ 12, ___ P.3d ___, ¶ 12 (citations omitted).

## DISCUSSION

¶15    Baker filed a Motion to Suppress and Dismiss four days before her District Court trial was scheduled to begin.  She argued in her Motion that her alleged misconduct did not constitute a crime, and therefore the charge should be dismissed.  She also maintained that the message she left on Steele's answering machine was a private communication that was illegally and unconstitutionally intercepted by the Great Falls Police Department.  She asserted that the taped evidence should therefore be suppressed.

5

¶16     The State countered that her conduct did constitute *attempted* obstruction in violation of § 45-7-302, MCA, and § 45-4-103(1), MCA. ("A person commits the offense of attempt when, with the purpose to commit a specific offense, he does any act toward the commission of such offense.") The State also argued that the taped message was not entitled to constitutional protection because Baker had no expectation of privacy regarding a message left on an answering machine at someone else's residence.

¶17     Prior to seating the jury on October 21, and after hearing further arguments on the merits of the Motion, the District Court denied it. The court determined that there were sufficient facts to justify taking the matter to trial. It further ruled that the message recording was admissible as it was not subject to constitutional privacy protection, nor had its confiscation been an illegal search and seizure. Baker does not challenge the District Court's decision not to suppress the taped message recording; therefore, we will address only the court's decision to deny Baker's request for dismissal.

¶18     Section 45-7-302(1), MCA, imposes criminal liability for obstructing an officer and states:

> A person commits the offense of obstructing a peace officer or public servant if the person knowingly obstructs, impairs, or hinders the enforcement of the criminal law, the preservation of the peace, or the performance of a governmental function, including service of process.

¶19     Baker maintains that her conduct constituted an "innocent" communication between neighbors and that the State failed to prove that she acted with the intent or purpose to obstruct the police on April 10.

6

¶20    The obstruction statute indicates that to commit the offense of obstruction, a person must "knowingly" obstruct, impair, or hinder the enforcement of the criminal law. Section 45-2-101(34), MCA, defines "knowingly" as "a person acts knowingly . . . when the person is aware of the person's own conduct . . . ." Therefore, it follows that to commit the offense of *attempted* obstruction, a person, with the purpose of obstructing an officer, need only perform any act toward the commission of obstruction while aware of the fact that he or she is performing that act.

¶21    The State presented evidence that Baker, who admitted that she thought Steele was a drug dealer, observed the heavily-armed, heavily-protected High Risk Unit (HRU) of the Great Falls Police Department proceed briskly and aggressively toward Steele's home and that she, nonetheless, knowingly chose to call him and leave a message on his answering machine that the HRU was present and it might be in his "best interests" to look out of the window. Based on this evidence, and despite Baker's protestations that she did not intend, or have the purpose, to hinder the officers, two juries convicted her of attempting to obstruct the police in their efforts to perform a legally authorized search.

¶22    As we have repeatedly stated, in jury trials the jurors are the fact finders or triers of fact. *See State v. Brown*, 2003 MT 166, ¶ 25, 316 Mont. 310, ¶ 25, 71 P.3d 1215, ¶ 25. It is the jury's responsibility to weigh the evidence and determine the credibility of the witnesses. *See State v. Felando* (1991), 248 Mont. 144, 146-47, 810 P.2d 289, 290. In the case before us, both juries after weighing the evidence and evaluating the credibility of the witnesses, concluded that Baker's actions constituted an attempt to obstruct the police. Our

7

review of the evidence, viewed in a light most favorable to the prosecution, leads us to conclude that this evidence was sufficient to support both the District Court's denial of Baker's Motion to Dismiss and the jury's determination.

¶23 Baker also challenges the relevancy of evidence that was introduced regarding Steele's history and his arrest, the purpose and use of HRU, and an officer's outrage at Baker's interference with this particular transaction. She claims that because this evidence was irrelevant and unfairly prejudiced her, it should have been excluded. She therefore contends that the District Court abused its discretion by admitting this evidence.

¶24 The State counters that presenting evidence of the high-risk nature of this law enforcement action was both relevant and necessary. It asserts that the evidence provided a basis for the conclusion that Baker's message, had it been received by Steele, would have *actually* interfered with the officers' ability to execute the high-risk search warrant. The State maintains that under *State v. Johnstone* (1990), 244 Mont. 450, 457, 798 P.2d 978, 982, when a defendant is charged with attempt, it is permissible for the prosecution to offer evidence that tends to show that the attempt, if completed, would have actually resulted in a violation of the underlying offense--in this case, obstruction of the police officers in their efforts to execute a search warrant.

¶25 The State also submits that evidence concerning both the HRU and Steele's dangerousness was part of the transactional facts and circumstances of the crime. Relying on *State v. Beavers*, 1999 MT 260, ¶ 49, 296 Mont. 340, ¶ 49, 987 P.2d 371, ¶ 49, the State argues that it should be allowed to present evidence for the jury's consideration which tends

8

to explain circumstances surrounding the charged offense. Lastly, the State claims that the transactional evidence was not prejudicial because the evidence of Baker's intent was found in her admission that she thought Steele was a drug dealer but chose to call him and warn him of the approaching HRU anyway.

¶26    In *Beavers*, we explained that the doctrine of *res gestae*, also referred to in Montana as the "transaction" rule, allows,

> evidence to be admitted regarding the circumstances, facts, and declarations which grow out of the main fact, which are contemporaneous with it and serve to illustrate its character. . . . This evidentiary doctrine allows the jury to consider evidence which tends to explain circumstances surrounding the charged offense as relevant, probative and competent and as part of the same litigated event.

*Beavers*, ¶ 48 (citations omitted).

¶27    We conclude that under the *Beavers* transaction rule, the District Court did not abuse its discretion when it allowed the State to introduce evidence regarding the high-risk nature of this particular law enforcement event, including evidence illustrating how dangerous Steele was and why it was necessary to employ the HRU to execute the warrant. By admitting this evidence, the court enabled the jury to understand the circumstances surrounding the police activity that was occurring on the date of Baker's arrest and how Baker's actions could have affected the outcome.

¶28    Lastly, Baker challenges the jury instructions. She claims that the jury was instructed regarding the "knowingly" standard and that it should have been instructed on the "purposely" standard. We find no merit in this claim. The jury instructions contained a

9

"knowingly" standard as well as multiple instructions on Baker's "purpose" of making the call to Steele. As noted above, we review jury instructions in a criminal case to determine whether the instructions fully and fairly instructed the jury on the law applicable to the case. *Gray*, ¶ 12. Because the obstruction statute required Baker to act "knowingly" and the attempt statute required that she act with a specific "purpose," and the jury instructions included standards for both, we conclude the jury was fairly and fully instructed on the law applicable to the case. We find no error.

## CONCLUSION

¶29 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA O. COTTER

10

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM REGNIER