No. 04-570

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 68

IN RE THE MARRIAGE OF

SCOTT TOAVS,

          Petitioner and Respondent,

   v.

KIMBERLY BULS, f/k/a KIMBERLY TOAVS,

          Respondent and Appellant.


APPEAL FROM:     The District Court of the Fifteenth Judicial District,
                     In and For the County of Roosevelt, Cause No. DR 99-06,
                     Honorable David Cybulski, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

            David F. Stufft, Attorney at Law, Kalispell, Montana

        For Respondent:

            Laura Christoffersen, Christoffersen, Fewer & Knierim,
            Culbertson, Montana


                    Submitted on Briefs:  September 7, 2005

                              Decided:  April 11, 2006

Filed:

              _____
                           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Kimberly Buls (Kim) appeals from the findings of fact, conclusions of law, and decree entered in the Fifteenth Judicial District Court, Roosevelt County, implementing a parenting plan for her and her former husband, Scott Toavs (Scott), regarding their daughter, Victoria. We affirm.

¶2     We address the following issue on appeal:

¶3     Did the District Court err by granting primary residential custody of Victoria to her father, Scott?

BACKGROUND

¶4     Victoria was born to Scott and Kim on February 5, 1999. Three months later, in May 1999, Scott and Kim separated, and their marriage was dissolved on April 4, 2000. After the separation, Scott remained in Wolf Point, Montana, where the couple had resided together, but Kim moved to Kalispell, Montana, over 500 miles away.

¶5     Pursuant to a Final Parenting Plan approved by the District Court on April 4, 2000, and modified on January 30, 2001, Victoria spent alternating months with each of her parents, requiring her to travel between Kalispell and Wolf Point at least once a month. The plan also provided that Scott would become the primary residential custodian when Victoria reached school age. However, this Court vacated this latter portion of the plan in *In re Marriage of Toavs*, holding that "the facts and issues necessary to support such relief have not been tried and proven at trial and the District Court was without authority

2

to grant such relief." *In re Marriage of Toavs*, 2002 MT 230, ¶ 27, 311 Mont. 455, ¶ 27, 56 P.3d 356, ¶ 27 (internal quotation marks omitted).

¶6 On November 10, 2003, as Victoria approached school age, Kim filed a petition to determine primary residential custody of Victoria and to determine child support. The District Court held a bench trial March 16 through 19, 2004. On May 26, 2004, the District Court entered its findings of fact, conclusions of law, and decree, including a parenting plan, directing that Victoria would primarily reside with Scott and attend school in Wolf Point. According to the new plan, Victoria will spend summers and most holidays with Kim in Kalispell. Kim appeals.

## STANDARD OF REVIEW

¶7 In *In re Marriage of Epperson*, 2005 MT 46, ¶ 17, 326 Mont. 142, ¶ 17, 107 P.3d 1268, ¶ 17, we articulated the applicable standard of review:

> Our standard of review for a district court's award of child custody is whether the district court's findings are clearly erroneous. When the findings are supported by substantial credible evidence, we will affirm the district court's decision unless a clear abuse of discretion is shown. *In re Marriage of Baer*, 1998 MT 29, ¶ 18, 287 Mont. 322, ¶ 18, 954 P.2d 1125, ¶ 18. The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *State v. Baker*, 2004 MT 393, ¶ 13, 325 Mont. 229, ¶ 13, 104 P.3d 491, ¶ 13 (citation omitted).

## DISCUSSION

¶8 **Did the District Court err by granting primary residential custody of Victoria to her father, Scott?**

3

¶9 Kim argues that the District Court abused its discretion by awarding primary residential custody to Scott. Offering extensive citations to the record, Kim contends that it is in Victoria's best interest, as that term is defined by § 40-4-212, MCA, for Kim to have primary residential custody. However, as noted above, our task is to consider whether the District Court abused its discretion by acting arbitrarily or outside the bounds of reason or whether the District Court committed clear error in its findings. "[W]hen the evidence furnishes reasonable grounds for different conclusions, the findings of the District Court will not be disturbed." *In re Marriage of Glanville* (1995), 272 Mont. 22, 25, 899 P.2d 527, 529 (quoting *Lumby v. Doetch* (1979), 183 Mont. 427, 431, 600 P.2d 200, 202). In this regard, Kim's argument is not persuasive.

¶10 It appears from the District Court's findings of fact that awarding primary residential custody to one party or the other was a relatively close call. For example, the District Court noted that both parents are reasonable parents and are in good mental health but that neither parent is reasonable in dealing with the other and that each has made inappropriate decisions and provokes the other. In addition, the District Court found that both parents' families are respectable, that Victoria has adjusted well to both communities, and that the schools and homes in each community are acceptable. However, commenting on credibility, the District Court found that Kim's facial expressions and body language communicated that her testimony was insincere, that she seemed to be "almost choking on her words when talking about wanting Scott to be involved in Victoria's life," that Kim has let the animosity between her and Scott

"interfere with her decisions involving Victoria," and that Kim is "far less accommodating than Scott when it comes to adjusting schedules to better fit the parties [sic] lives."

¶11    Kim does not challenge any of the above findings. The only finding of fact that she argues was erroneous referred to Scott's girlfriend at the time of trial, Dr. Jennifer Gray. At trial, Scott gave uncontroverted testimony that he and Dr. Gray were considering engagement and that Dr. Gray had a good and trusting relationship with Victoria. The District Court found that the "relationship [with Scott] is serious and Dr. Gray has a good relationship with Victoria." After the decree was entered, Kim brought a consolidated Rule 59, M.R.Civ.P., motion to alter the judgment and Rule 60(b), M.R.Civ.P., motion seeking relief from the judgment based upon new evidence. In her affidavit in support of the motion, Kim stated that she had discovered that Dr. Gray had moved to Africa shortly after the trial and that Scott knew about this impending departure at the time of trial but wanted to use his relationship with Dr. Gray to bolster his position before the District Court. The District Court denied the motion, and Kim does not challenge that ruling. We therefore do not contemplate her affidavit in support of the post-trial motion. Based on Scott's uncontroverted testimony, we conclude that this finding of fact was supported by substantial credible evidence and was not clearly erroneous.

¶12    In challenging the District Court's exercise of discretion, Kim calls into question Scott's veracity, attitude, and character, and she accuses Scott of abusing her emotionally

and physically and of abusing alcohol. The "emotional abuse" to which Kim refers consists of two instances in which Scott used profanity toward her. Whether this was done in front of Victoria was disputed. The "physical abuse" is comprised of one incident during an exchange in Havre. Kim described the incident at trial:

> I was taking Victoria to Scott. I got out of the car to take her to him. I was wanting to put her in her car seat, and he didn't want me to put her in her car seat. And he started to shut the door on me, and I stopped the door, and I said, "Scott, let me buckle her in, and then I will leave." And he took my arm, pulled me away from the truck, slammed the door, and took off.

Regarding alcohol use, the record indicates that Scott uses alcohol in moderation, but that on occasion, particularly during his college years, he has drunk to excess. As to Scott's veracity, Kim argues that Scott lied to the District Court about whether he had allowed Kim to speak to Victoria over the telephone on one of Victoria's birthdays, about whether Kim had been late to exchanges in Havre, and about whether he had taken Victoria to the hospital on one occasion. The record indicates that Scott did contradict himself regarding the birthday and Havre incidents, but the testimony regarding the hospital incident was less clear. Kim reasons that, in light of the above factors, the District Court "exceeded the bounds of reason resulting in substantial injustice" by awarding primary residential custody to Scott.

¶13 Despite Kim's contentions, it is clear from the findings of fact that the District Court considered the "inappropriate decisions" of both Scott and Kim, weighed them, and found that Scott "seems to have learned more from those mistakes so that it will have less adverse impact than Kimberly's anger," and that Scott was the "most likely to insure [sic]

6

that Victoria has continuing and frequent contact with both parents . . . ." As we have noted before, "We recognize the difficult position in which district courts are placed regarding child custody cases and therefore presume the District Court's decision is correct since it is in a better position than this Court to resolve such cases." *In re Paternitiy of C.T.E.-H.*, 2004 MT 307, ¶ 18, 323 Mont. 498, ¶ 18, 101 P.3d 254, ¶ 18. In the present case, Kim has failed to demonstrate that the District Court "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice."[1] It is not clear that Scott's "inappropriate decisions" outweigh Kim's, given the District Court's perception of Kim's anger and apparent insincerity about co-parenting. Therefore, we conclude that the District Court did not abuse its discretion by awarding primary residential custody to Scott.

¶14 Though we find no fault with the District Court's decision, we consider it necessary to address some of the comments and conduct of both the trial judge and Kim's counsel. We conclude that these are not matters of law but of decorum. The District Court Judge made a number of comments that are not conducive to an atmosphere of

---

[1]Moreover, other than citing cases for the standard of review and noting the previous appeal involving these parties, Kim cites only one authority in support of her position, and only on a tangential point. To demonstrate the impropriety of the District Court's finding that Kim had helped Victoria sign her name with her mother's surname and that this was an example of Kim's poor attitude, Kim cites *In re Custody of J.C.O.*, 1999 MT 325, 297 Mont. 327, 993 P.2d 667 (affirming the trial court's decision to deny the child's natural father his request that the minor child take his surname). *J.C.O.* is unsupportive of Kim's argument. Victoria's surname is Toavs, not Buls, but in any event the surname is not at issue. Kim's attitude reflected by the incident was the relevant consideration for the District Court.

respectful administration of the law. We need not mention every instance, but we feel compelled to make note of several.

¶15　In encouraging the parties to settle after the presentation of both cases-in-chief, the judge said the following:

> It's still not too late to settle. I mean, now, both guys have got to have their say, both guys know what the other side has to say.
>
> . . . .
>
> Both lawyers can tell their clients what my decision is based on and what the evidence is generally. And, again, it's because it's better for you. *It's easier for me to just poop out a decision and be done with it.* I mean, it really is, than to encourage settlement because I waste a lot of time over the years waiting 45 minutes every morning and—Well, that's what—you can ask her, she'll tell you. If it's a 9 o'clock divorce hearing, it doesn't usually get to start until 10 because I make them argue for an hour first. [Emphasis added. ]

The judge also offered the following when instructing Scott regarding how he should respond to questions from counsel for the opposition:

> THE COURT: Yeah, that's just—answer the question. You can almost *play a game with him* and be as short as possible and to the point and accurate. If something needs explaining, that's why you pay the lady in black to make notes, see, and she'll . . . add to it and go from there.
>
> . . . .
>
> THE COURT: Again, *just play the game.* Answer his questions--
>
> MR STUFFT [counsel for Kim]: And, Judge it's not a game to me.
>
> THE COURT: Well, no, but I mean, I'm trying to get him to just answer yes or no and make his answers as short as possible. That seems to be couching in phrases like play the game, then it works easier for him to understand what I'm trying to get him to do. [Emphasis added.]

8

Although Kim argues that these and other comments by the judge suggest he was biased against her, we cannot conclude from the context of any of the comments that the inappropriateness of the judge's comments worked against either party or affected the court's decision. However, the use of such turns of phrase is not appropriate from the bench and convey an attitude of disrespect about the judicial process. Words matter.

¶16 Kim's counsel exacerbated matters. Based on an obscure reference to witness testimony, he suggested the judge was "an ace in the hole" for the opposing side and instigated an apparently heated exchange between himself and the judge. Counsel made a record of the judge's "facial features" and "glaring." He then offered an argument for the judge's recusal, which, from a review of the transcript, may have been within the bounds of plausibility, but counsel's manner was unnecessarily accusatory and inciting. That manner has also revealed itself in the tone of the briefs on appeal, wherein counsel accuses the judge of partiality but makes no reasonable demonstration of how the judge's inappropriate words or actions may have biased his factual findings or legal conclusions against Kim.

¶17 We perceive no impact on the District Court's order resulting from bias and no abuse of discretion on the part of the judge from this record. However, a troubling lack of respect for decorum was clearly evident, which we trust will henceforth be avoided.

¶18 Affirmed.

/S/ JIM RICE

We concur:


/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON