DA 09-0444

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 100

IN RE THE MARRIAGE OF
AMBER GUFFIN, f/k/a AMBER
PLAISTED-HARMAN,

      Petitioner and Appellant,

  v.

THOMAS PLAISTED-HARMAN,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Seventh Judicial District,
                In and For the County of Prairie, Cause No. DR 2008-001
                Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jeff A. Turner, Towe, Ball, Enright, Mackey & Sommerfeld, PLLP,
                Billings, Montana

        For Appellee:

                J. Dennis Corbin, Attorney at Law, Miles City, Montana

                                Submitted on Briefs:  March 17, 2010

                                     Decided:  May 4, 2010

Filed:

          _____
                         Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Petitioner Amber Guffin (Amber) appeals from an order adopting an Amended Final Parenting Plan issued in the Seventh Judicial District Court, Hon. Richard A. Simonton presiding. For the reasons set forth below, we reverse the decision of the District Court.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    Amber and respondent Thomas Plaisted-Harman (Thomas) were married in November 2001, in Kalispell, Montana. The parties had two children while living in Kalispell. In February 2006, the parties moved to Terry, Montana, so that Thomas could take a trucking job. In September 2007, Amber and Thomas separated. In November 2007, Thomas quit his trucking job and took a job managing a ranch two hours away from the family in Ekalaka, Montana.

¶3    Thomas and Amber filed a self-represented and joint parenting plan before the District Court in February 2008. A decree of dissolution was entered by the District Court on February 28, 2008. This parenting plan had the children residing primarily with Amber, with Thomas parenting the children every other weekend and during Christmas vacation and other holidays, and during summer vacation.

¶4    After the dissolution, Amber decided she wanted to move back to Kalispell, where most of her family and her boyfriend reside. In March 2008, she told Thomas of her plans. In June 2008, she moved back to Kalispell and moved in with her boyfriend, while Thomas kept the children with him for his summer parenting time. Thomas subsequently filed a motion to amend the parenting plan. Amber did not provide written notice to

Thomas of her plans to move, as required under § 40-4-217, MCA, until after Thomas had filed his motion to amend.

¶5     The matter of amending the parenting plan was heard before the District Court. Both parties were represented by counsel and presented testimony and evidence. After the hearing, the District Court entered an order amending the parenting plan and making Thomas the primary residential custodial parent. Under the amended plan, Amber would parent the children one weekend per month during the school year, during the Thanksgiving weekend, Easter and spring break, and during much of the summer recess. The parents would divide Christmas break with the children. In his order, Judge Simonton explicitly stated that Amber should have to "pay the price" of reduced parental contact since she was the one who decided to move to Kalispell.

¶6     Amber appealed Judge Simonton's decision. In *In re the Marriage of Amber Guffin, f/k/a Amber Plaisted-Harman v. Thomas Plaisted-Harman*, 2009 MT 169, 350 Mont. 489, 209 P.3d 225, a unanimous panel of this Court reversed, holding that Amber had a constitutionally-guaranteed right to travel and could not be penalized by Judge Simonton for her exercise of this right. *In re Marriage of Guffin*, ¶ 11. We stated:

> This right to intrastate travel is the same right that Thomas exercised when the family moved to Terry so that he could take a trucking job, and the same right that he exercised when he moved to Ekalaka to work on the ranch. Amber has no less a right to move to pursue her life goals than Thomas had to pursue his. The District Court may not penalize Amber for exercising her right to travel by removing her as the primary custodial parent of the children, and it was an abuse of discretion to do so. Any decision as to the custody of the children must be based upon a careful examination of what is in their best interests. *In the Matter of the Marriage of Robinson*, 2002 MT 207, ¶ 20, 311 Mont. 246, 53 P.3d 1279.

3

*In re Marriage of Guffin*, ¶ 12.

¶7      This matter was remanded to the District Court. The District Court gave the parties the opportunity to submit additional proposed findings or briefs, and both parties declined to do so. The District Court entered Amended Findings of Fact, Conclusions of Law, and Parenting Plan on July 9, 2009, again designating Thomas as the primary residential custodial parent, and ordering that the children would reside with him in Ekalaka. Amber was to parent the children one weekend per month during the normal school year, and have the children primarily reside with her during the summer recess. Amber was also to parent the children during Thanksgiving, Easter, and spring break. Amber and Thomas would divide most of the other holiday times occurring throughout the year. The Amended Final Parenting Plan was in essence the same one entered by the District Court prior to remand from this Court. The District Court did, however, enter additional findings of fact and conclusions of law in support of its decision, which are the subject of the present appeal.

¶8      The District Court found that Thomas and Amber made a joint decision as a family to move to Terry, Montana, in 2006. The District Court found that most of Amber's family lives in the Kalispell area. The District Court noted Amber's concerns about Thomas' parenting ability, her claims that he had missed approximately one-half of his scheduled parenting times **prior to the Court's initial revision of the parenting plan,** and her concern that the youngest child appeared to be regressing in his potty training. It noted Amber's concerns about the children's safety with Thomas, and her claim that the older child had been disciplining the younger child, instead of Thomas

4

fulfilling this role. The District Court also noted Thomas' testimony that he considered Amber to be a good mother and a fit parent, as well as his assertions that the environment in Ekalaka was positive for the children, and that he would be available to be with them due to the nature of his ranch work. Thomas also stated that his parents and neighbors could help him with the children if needed.

¶9 In its consideration of the best interests of the children pursuant to the factors under § 40-4-212, MCA, the District Court essentially concluded that both parents were fit, and that the developmental needs of the children would be met by either parent. However, with regard to whether the children would have "frequent and continuing contact with both parents" under § 40-4-212(1)(l), MCA, the District Court intimated that Amber's decision to move to Kalispell was not done in the best interests of the children, and noted that Amber failed to provide the required written notice of her intent to move in compliance with statutory notice requirements. Judge Simonton also described the impact on the children of the physical separation of the parents as follows:

> Each parent testified that he or she would insure the interaction and interrelationship of the children with the other parent as well as others who significantly affect their best interests. Admittedly, at the time of the hearing, the children did not have many friends in Ekalaka. The parental grandparents live near Terry and a maternal aunt lives in Miles City. It appears that the rest of the relatives, including maternal grandparents, live in the Kalispell area. The children's interaction with the Kalispell relatives will be limited. <u>By choice of the family</u> in 2006 it was limited when they moved to Terry. That move was jointly made by both parents presumably looking out for the best interests of the children. Amber's move to Kalispell was a <u>unilateral decision</u> which necessarily affects the relationship of one parent with the children.

(Emphasis in original.)

5

¶10 The District Court remarked that there were relative advantages and disadvantages for the children of living in Ekalaka when compared with Kalispell, but stated that it was "not going to resolve that dispute." On balance, the District Court did not conclude that either location would have any significant advantages or disadvantages for the children, nor did it conclude that the children would not be able to adjust and thrive in the care of either parent.

¶11 Section 40-4-219, MCA, describes the circumstances under which a parenting plan can be amended. The statute reads in pertinent part as follows:

> **40-4-219. Amendment of parenting plan -- mediation.** (1) The court may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child. In determining the child's best interest under this section, the court may, in addition to the criteria in 40-4-212, also consider whether:
> (a) the parents agree to the amendment;
> (b) the child has been integrated into the family of the petitioner with consent of the parents;
> (c) the child is 14 years of age or older and desires the amendment;
> (d) one parent has willfully and consistently:
> (i) refused to allow the child to have any contact with the other parent; or
> (ii) attempted to frustrate or deny contact with the child by the other parent; or
> (e) one parent has changed or intends to change the child's residence in a manner that significantly affects the child's contact with the other parent.
> (2) A court may modify a de facto parenting arrangement in accordance with the factors set forth in 40-4-212.
> (3) The court shall presume a parent is not acting in the child's best interest if the parent does any of the acts specified in subsection (1)(d) or (8).

¶12     Specifically, § 40-4-219(1)(e), MCA, allows the amendment of a parenting plan when "one parent has changed or intends to change the child's residence in a manner that significantly affects the child's contact with the other parent." The District Court entered the following finding under this factor:

> Amber's move to Kalispell would change the children's residence in a manner that would significantly affect their contact with their father. The Court originally found that both Thomas and Amber were good parents. The Court found that Amber's decision to move with the children to Kalispell, 700 miles from their father, would necessarily affect the relationship between the father and the children. This was a conscious, intentional decision by Amber. The Court also believes that at the time the parties agreed to a parenting plan, February 1, 2008, Amber at least considered moving. She testified that she made the final decision in February 2008. She did not advise the Court or Thomas of that decision at the time of the hearing [on] February 22, 2008. She would have the Court believe that during the six days between that hearing until the end of the month, she made her final decision to move. While there is no evidence to indicate that her failure to advise her husband or the Court of that decision on February 22, 2008, was to gain some advantage in taking the children with her, the burden of changing an existing parenting plan is greater than initially establishing a parenting plan. The Court can only guess whether Thomas would have agreed to the original parenting plan had he known Amber planned to take the children 700 miles from him so that the terms of the original parenting plan could not practically be exercised. The Court certainly would not have approved the original parenting plan knowing that it could not be exercised with the children 700 miles from their father.

¶13     The District Court noted that § 40-4-219(3), MCA, creates a presumption that a parent is not acting in the best interests of the children if that parent attempts to frustrate or deny contact with the child by the other parent. However, the District Court rightly observed that this presumption **does not apply** to § 40-4-219(1)(e), MCA. Judge Simonton nevertheless concluded that "[i]n this case, the Court finds that Amber's move to Kalispell would effectively deny contact with Thomas under the terms of the original

7

parenting plan entered into less than one week prior to her decision to move." Judge Simonton then concluded his findings as follows:

> This Court is not denying Amber the right to change her residence as she wills. To say that Amber's decision in choosing between moving or leaving her children with Thomas is a restriction on her right to travel, ignores the requirement that the Court consider frequent and continuing contact between the parents and children as being in the children's best interests, and that parenting plan amendments must consider whether parental moves significantly affect the children's contact with the other parent.

¶14 In its conclusions of law, the District Court noted that § 40-4-219, MCA, provides that a parenting plan can be amended when there is a change in circumstances and the amendment is necessary to serve the best interests of the children. Furthermore, the District Court concluded that under § 40-4-212, MCA, it was required to consider the fact that Amber changed her residence in a manner that significantly affected the children's contact with Thomas. The District Court also noted that it had to consider the purpose and objectives of a final parenting plan pursuant to § 40-4-233, MCA, as well as the applicability of the criteria in § 40-4-234, MCA.

¶15 Turning to these criteria, the District Court concluded that each parent was fit to care for the children, and that it was in the best interests of the children to have maximal time with each parent. The District Court also concluded that Amber had legitimate reasons for moving back to Kalispell, and that a significant portion of the children's lives had been spent in Kalispell. The District Court then returned to the issue of the timing of Amber's decision to move to Kalispell in relation to the District Court's decision to grant

8

the amended parenting plan in the prior proceedings. On this point, Judge Simonton concluded as follows:

> In remanding this case, our Supreme Court focused on Amber's constitutional right to travel and concluded that the U.S. Constitution guarantees the right to travel within Montana as well as interstate. It notes that Amber should not be penalized for exercising her right to travel any more so than Thomas was penalized when the family moved to Terry or when Thomas moved to Ekalaka. There is a difference. The <u>family</u> chose to move to Terry from Kalispell and the family stayed together as a result of the move. The <u>family</u> agreed that Thomas could work in Ekalaka. The decision by Amber to move to Kalispell was <u>unilateral</u>. That move would not keep the family together or in close proximity, and it effectively changed the parenting plan that was agreed upon just one week before Amber's decision to move.

(Emphasis in original.)

¶16 The District Court went on to examine two cases from other jurisdictions which dealt with situations analogous to the case at bar (see *In Re the Marriage of Ciesluk*, 113 P.3d 135 (Colo. 2005); *In the Matter of the Marriage of Fedorov*, 206 P.3d 1124 (Or. App. 2009)), gleaning therefrom that the focus in "relocation" cases should be on the best interests of the child, with each parent viewed on an "equal footing" with respect to the structure of a parenting plan. So saying, the District Court stated:

> Amber's constitutional right to travel is not impeded. To say that she is being punished by not allowing her to take the children with her, in fact, elevates her constitutional right to travel above the constitutional rights of Thomas and the children to grow up with each other and to maintain a father/child relationship. Admittedly, the children's relationship with their mother will be impaired by her move to Kalispell. That is her choice. For Amber to say that her move to Kalispell was not influenced by her desire to move in with her boyfriend is not credible. For her to not reveal her plans in advance to her husband and to the Court prior to an initial parenting decision is unconscionable. Thomas testified that he agreed to the original parenting plan only because he and the children would be close and he would be able to exercise parenting. That is

9

confirmed by the terms of the parenting plan and the testimony at the time of the dissolution hearing.

¶17 Accordingly, the District Court concluded that the Amended Final Parenting Plan, awarding primary custody to Thomas, and granting Amber one weekend per month, most of the summer recess, Thanksgiving, Easter, and spring break, and a relatively equal division of holiday time, was in the best interests of the children.

¶18 On appeal, Amber argues that the District Court abused its discretion in awarding primary custody to Thomas and urges this Court to reverse the District Court's decision. Thomas argues the District Court should be affirmed. We state the issue on appeal as follows:

¶19 *Did the District Court clearly abuse its discretion in modifying the parenting plan in this case?*

**STANDARD OF REVIEW**

¶20 We review the findings in support of a district's decision to modify a parenting plan under the clearly erroneous standard. *In re Marriage of Oehlke*, 2002 MT 79, ¶ 9, 309 Mont. 254, 46 P.3d 49. Conclusions of law are reviewed for correctness, and we will only reverse a district court's decision where an abuse of discretion has been clearly demonstrated. *In re Marriage of Oehlke*, ¶ 9. In other words, a district court's decision "will not be disturbed on appeal unless there is a mistake of law or a finding of fact not supported by substantial credible evidence that would amount to a clear abuse of discretion." *In re S.P., C.P., H.M., J.M., K.M., and Y.M., Youths in Need of Care*, 241 Mont. 190, 194, 786 P.2d 642, 644 (1990) (quotation omitted). The test for abuse of

discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *State v. Baker*, 2004 MT 393, ¶ 13, 325 Mont. 229, 104 P.3d 491.

## DISCUSSION

¶21 Amber contends that Judge Simonton ignored this Court's ruling in *In re Marriage of Guffin*. In support, she refers to the portions of Judge Simonton's order recited above, for the proposition that the District Court continues to punish her for deciding to move to Kalispell. Amber also contends that Judge Simonton punished her for the timing of her decision to move, even though none of the statutory criteria in §§ 404-4-212 and -219, MCA, called for consideration of that factor. In this connection, Amber argues that the issue of the propriety of her notice to Thomas is a "red herring" which should not influence the ultimate decision in this case.

¶22 Amber maintains that there was no evidence presented to the District Court demonstrating that having the children primarily reside with her in Kalispell—as contemplated under Amber's proposed plan—would have significantly affected Thomas' time with the children, or that it was against their best interests to move with her to Kalispell. Amber notes that while she and Thomas were still married and Thomas worked as a trucker, he was away from the family for up to 15 days at a time, leaving Amber as the sole caregiver for the children. After the parties separated in November 2007, Thomas quit his trucking job and moved to Ekalaka, roughly two hours away from where she and the children resided. Amber argues that the record demonstrates this was

11

not a family decision, but was made unilaterally by Thomas after the parties' separation, contrary to the findings of the District Court.

¶23 Under their original self-represented parenting plan, Amber was the primary custodial parent with Thomas receiving alternating weekends, summer visitation, and split and alternating holiday visitation. As Amber notes, the District Court acknowledged that evidence was presented showing Thomas missed up to 50% of his scheduled visitation time due to work and weather. In essence, therefore, Amber contends that if the District Court had retained the original plan, Thomas' actual time with the children would have been only slightly affected, as he would have received just two fewer days with them per month than he previously exercised. In fact, Amber argues that Thomas would receive more time under her plan since he would receive additional break and summer time with the children.

¶24 The mainstay of Amber's argument is that the District Court failed to consider the best interests of the children in its decision. Thomas conceded and the District Court agreed that she was a fit parent and a good mother. Yet, under the District Court's decision, the children went from spending 26 to 29 days per month with Amber as their primary caregiver, to only two days per month. Amber argues that the primary basis for this decision was her choice to move back to Kalispell, and not the children's best interests.

¶25 Finally, Amber contends that the District Court made inconsistent and erroneous findings in its final order and Amended Final Parenting Plan. For example, Amber argues that Thomas' decision to move to Ekalaka was a unilateral decision he made after

12

the parties had separated, and not a family decision as the District Court found. Amber also contends that the timing of her decision to move was not done to gain an advantage over Thomas, and was not "unconscionable" as concluded by the District Court. Amber gave Thomas ample notice so that he could file for a modification of the parenting plan. Further, Amber notes that the District Court found she had legitimate reasons for moving to Kalispell, that her boyfriend had a positive relationship with the children, and that Amber would not have entered into a relationship which adversely affected the children— yet the Court inexplicably found that her explanation regarding the decision to move to Kalispell was "not credible." These and other findings of the District Court were inherently inconsistent, she maintains, and are illustrative of the District Court's mistaken focus on extraneous factors.

¶26 Thomas argues the District Court did not clearly abuse its discretion. He maintains the District Court did not penalize Amber for exercising her constitutional right to travel, but that the "reason for that travel must somehow fit into the equation." Thomas also argues that the failure of Amber to follow the notice requirements in § 40-4-217, MCA, was properly considered by the District Court. Thomas argues that the "District Court was not totally convinced that Amber's move to Kalispell was in good faith," and that her credibility regarding the basis of her decision to move and its timing was "doubtful." Thomas argues that these credibility determinations should not be disturbed.

¶27 Additionally, Thomas asserts that the District Court properly took account of all the criteria in § 40-4-219, MCA, when evaluating the best interests of the children,

including Amber's decision to move and how it affected the children's contact with him. He maintains that his parenting plan maximized the time with each parent and enhanced the parent/child bond in the face of Amber's decision to move. He argues that his flexible work schedule at the ranch allowed him more time with the children, while Amber's proposed schedule did not provide him adequate parenting time.

¶28 Section 40-4-219, MCA, discusses the circumstances under which a district court can exercise its discretion to modify a prior parenting plan. *See Opinion*, ¶ 11. It details the criteria to be considered by the District Court, in addition to those set forth at § 40-4-212, MCA. Section 40-4-219(3), MCA, states that a court presumes a parent is not acting in a child's best interest if a parent engages in any of the conduct specified in subsections (1)(d) or (8) of the statute; however, as the District Court acknowledged, this presumption does not apply to § 40-4-219(1)(e), MCA. Nevertheless, concluding that Amber's move "effectively" denied Thomas contact with the children, the District Court implicitly invoked the presumption that Amber's decision to move was not done in the best interests of the children. *See Opinion*, ¶¶ 12-13.

¶29 Given the District Court's fixation on the timing and motivation behind Amber's decision to move, as well as its "unilateral" character, we are forced to conclude that the District Court has again chosen to penalize Amber for her decision to move, instead of focusing on the best interests of the children and the statutorily-mandated objectives and purposes of a parenting plan. As this Court made clear in *In Re Marriage of Guffin*, Amber simply cannot be penalized for deciding to move to Kalispell; instead, "[a]ny decision as to the custody of the children must be based upon a careful examination of

14

what is in their best interests." *In re Marriage of Guffin*, ¶ 12. As we stated in *In re Marriage of Robinson*:

> When determining the best interests of a child, the court must consider relevant parenting factors including, but not limited to, the criteria in § 40-4-212, MCA. These criteria include the wishes of the child's parent or parents; the wishes of the child; the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interests; the child's adjustment to home, school and community; and continuity and stability of care.

*In re Marriage of Robinson*, ¶ 28.

¶30 The Legislature explicitly exempted the change in residence provisions of § 40-4-219(1)(e), MCA, from any presumption that the moving parent is acting against a child's best interests simply because he or she changes her residence in a manner that significantly affects the child's contact with the other parent. Nonetheless, it is evident from the language of its order that the District Court utilized § 40-4-219(1)(e), MCA, to trigger a presumption against the moving parent. This is flatly prohibited by this Court's remand in *In Re Marriage of Guffin*, and the plain language of the statute itself. In those cases in which a parent relocates and a parenting plan is modified pursuant to § 40-4-219(1)(e), MCA, the guiding principle remains the best interest of the child. *See In re Marriage of Robinson*, ¶ 27. While a change of residence by one parent which significantly affects that child's contact with the other can be considered by the district court in determining whether to grant the modification of a parenting plan, and how the plan should ultimately be structured, it can raise the presumption that the moving parent was acting against the best interests of the children *only if* the district court also

15

concludes that the criteria under § 40-4-219(1)(d), MCA, are satisfied—which did not occur here. As the District Court did not find that Amber "willfully and consistently" attempted to frustrate or deny Thomas contact with her children in deciding to move, (*see* § 40-4-219(1)(d)(ii), MCA), it could not as a matter of law invoke the presumption that she was acting against the children's best interests under § 40-4-219(3), MCA, based solely on her decision to move. This is a mistake of law amounting to a clear abuse of discretion. *In re S.P*, 241 Mont. at 194, 786 P.2d at 644. Accordingly, we conclude the District Court committed a clear abuse of discretion in its adoption of the Amended Final Parenting Plan.

¶31 Further, we conclude that Amber's failure to strictly comply with the notice requirements of § 40-4-217, MCA, does not bear on the ultimate and fundamental question of what type of parenting plan is in the best interests of the children. There is no dispute that Amber notified Thomas of her intent to move three months before she did so, roughly six months before the children would have otherwise been returned to her under the parties' agreed parenting plan, thereby giving Thomas ample time to weigh his options and file any motion he deemed necessary.

¶32 Thomas asserted and the District Court agreed that Amber was a fit parent and a good mother, that she had supportive family in Kalispell, and that the children had a positive relationship with Amber's boyfriend. Against this backdrop, the District Court's focus on Amber's decision to move as "unilateral," and its finding that her failure to follow the notice procedures in § 40-4-217, MCA, was "unconscionable," demonstrates

16

that the District Court was swayed more by her decision to move than it was by the children's best interests. We therefore reverse.

¶33 Upon remand, the district court considering this issue should focus solely on the best interests of the children pursuant to §§ 40-4-212 and -219, MCA, and the purposes and objectives of a parenting plan. In this connection, the court may consider Amber's relocation, among other statutory factors, in considering whether to modify the parenting plan. However, unless a district court finds that Amber's decision to move exemplifies a "willful and consistent" attempt to frustrate or deny Thomas contact with the children, her decision to move cannot be held against her, nor can it be considered as being against the best interests of the children.

¶34 We appreciate the difficulty of fashioning a fair and workable parenting plan under the geographical circumstances here presented. Our decision today should not be construed as mitigating for or against any particular parenting plan; rather, it is simply a reaffirmation of what the district court's focus must be when faced with the prospect of amending a parenting plan.

## CONCLUSION

¶35 We conclude the District Court clearly abused its discretion in adopting the Amended Final Parenting Plan. We therefore reverse and remand for further proceedings consistent with this Opinion.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON


Justice Brian Morris dissents.

¶36 I would not determine on the record presented that the District Court clearly abused its discretion in amending the parenting plan by designating Thomas as the primary custodial parent. *In re Marriage of Oehlke*, ¶ 9. I dissent.

/S/ BRIAN MORRIS


Justice Jim Rice joins in the foregoing dissent.

/S/ JIM RICE