**NO.    93-170**

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

TERRY LEE GALLAGHER,

      Petitioner and Respondent,

  and

REBECCA JUNE GALLAGHER,

      Respondent and Appellant.

FILED

SEP 12 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable John Warner, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Roxanne Rogers, Montana Legal Services Association,
Havre, Montana

      For Respondent:

          Patricia Jensen; Rice Law Office, Havre, Montana


Submitted on Briefs:  October 5, 1993

Decided:  September 12, 1994

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Rebecca June Davis (formerly Gallagher) appeals from an order of the Twelfth Judicial District Court, Hill County, modifying the primary physical custody of her and her former husband's three children. We affirm.

Terry Lee Gallagher (Terry) and Rebecca June Davis (Rebecca) were married in January 1982, in Havre, Montana. Their marriage was dissolved in 1988. The District Court incorporated the parties' separation agreement into the dissolution decree which provided for joint custody of the parties' three minor children. Rebecca was designated as the primary physical custodian during the school year and Terry was granted custody during the summer months.

Rebecca later married Richard Davis (Richard) and together they had two children. Rebecca's and Richard's family, which now consisted of five children and two adults, at times lived in poverty and depended on public assistance.

In August 1992, Terry learned that Rebecca intended to move her entire family from Montana to Virginia. Terry filed with the District Court a petition to modify the primary physical custody of his three children. He alleged that since his children were integrated into the Havre school system, he should be awarded primary physical custody thereby allowing them to continue their schooling in Havre. Terry further alleged that Rebecca's resources to provide for the children in Virginia were unknown.

Rebecca responded, asserting in part that it would not be in the best interests of the children to change their primary physical

custodian as they had been integrated into her family unit for over four years. In September 1992, Rebecca, Richard and the five children moved to Virginia.

In a November 1992 hearing, the District Court heard testimony, received evidence and met privately in chambers with Terry's and Rebecca's three children. After reviewing the record, the court determined that it would be in the best interests of the children to modify the parties' joint custody arrangement by making Terry the primary physical custodian during the school year and Rebecca the custodian of the children during the summer. In making its determination, the court found that Rebecca and Richard had problems in their relationship in addition to financial difficulties which adversely affected the best interests of the children.

These difficulties included: Rebecca had sought two restraining orders against Richard: the children were improperly clothed: the family faced eviction from its residence in Virginia: they did not own an automobile: the five children shared one common bed in the same room as their parents; and Rebecca did not work outside of the home nor was Richard employed at the time.

The court noted that Terry was a supportive father, and that he had "adequate housing" for his three children. Further, no evidence was presented at the hearing to suggest that Terry's home was unsafe. The court found that the children's environment at Rebecca's house seriously endangered their physical, mental, moral and emotional health, and that the danger outweighed any detriment

3

a change of custody might cause.  Rebecca appeals.

I

Did the District Court improperly base its decision on evidence not found in the record?

Rebecca argues that the court improperly took judicial notice of a disputable fact--that the Davis family's use of a kerosene heater in their home was unsafe.  She states that no evidence was presented during trial which alluded to the safety of the heater, and that, in essence, the court became an advocate for Terry by permitting its personal views to become part of its decision.  Additionally, she asserts that the court improperly impugned her testimony based on the court's personal views of kerosene heaters in the home.  Conversely, Terry contends that because the court specifically stated that its decision was not based on the safety of the kerosene heater, it committed harmless error by questioning the dangers of operating the heater in the Davis household.

For the convenience of Rebecca, who had to travel from Virginia to Montana to attend the hearing, the court made oral findings of fact in court with the parties present.  The court did make statements concerning the safety of using a kerosene heater in the home: however, the court also stated that it did not base its decision on those statements.  Rather, as discussed below, the court gave appropriate reasons for modifying the parties' joint custody arrangement.  Therefore, we conclude that the court did not improperly base **its** decision on evidence not found in the record.

4

Did the District Court use the proper legal standard to modify the primary physical custody of the children?

The parties generally agree that the requirements relating to modification of custody contained in § 40-4-219, MCA, apply in this case. Rebecca argues, however, that those "jurisdictional requirements" were not met; Terry contends otherwise.

We recently clarified that § 40-4-219, MCA, applies to a petition to modify child custody which has "the effect of substantially changing the primary residence of the parties' children, even though the formal designation of 'joint custody' is retained . . . ." In re Marriage of Johnson (Mont. 1994), ___ P.3d ___, 51 St.Rep. 703, 706. We emphasized that such petitions must satisfy the jurisdictional requirements contained in that statute. <u>Marriage of Johnson</u>, 51 St.Rep. at 706. Only if and after the court determines that the petitioner has met the combined jurisdictional requirements by establishing both "changed circumstances" and one of the other statutorily defined factors may the court go on to consider the best interests of the children.

Here, the relevant additional statutory factor is "the child's present environment endangers seriously his physical, mental, moral, or emotional health and the harm likely to be caused by a change in environment is outweighed by its advantages to him[.]" Section 40-4-219(1)(c), MCA. In the case presently before us, then, Terry was obligated to meet both the "changed circumstances" and "serious endangerment" requirements as a threshold matter. The District Court determined that those requirements were met and,

5

further, that the best interests of the children were served by modifying primary physical custody.

As we stated in <u>Marriase of Johnson,</u> a party seeking modification pursuant to § 40-4-219, MCA, bears a heavy burden. <u>Marriage of Johnson</u>, 51 St.Rep. at 706 (citation omitted). When reviewing a district court's findings regarding modification, we will not reverse unless those findings are clearly erroneous. In re Marriage of McClain (1993), 257 Mont. 371, 374, 849 P.2d 194, 196.

Here, we find sufficient evidence in the record to support the District Court's finding that a change of circumstances existed requiring a modification in consideration of the children's best interests. In its January 27, 1993, order denying Rebecca's motion, the court detailed the living arrangements of the children and stated in part:

> Prior to their move to Virginia, the children lived with their mother in unsanitary conditions, partially from neglect, and partially from animal waste. The children lived in abject poverty. Neither [Rebecca] nor Mr. Davis worked. The children's clothing was inadequate. Their rent was unpaid and they faced eviction when they moved to Virginia. The utility bills were unpaid.

> Currently, they have no operative vehicle or telephone. Additionally, evidence shows that at least some of the money received for the children from public assistance was used for Mr. Davis' pleasure, obviously adversely affecting the children.

> . . .

> [Rebecca] obtained two restraining orders against her current husband due to physical abuse. Mr. Davis has been difficult to control, and the children were intimidated by him. During the court's interview with the children, they stated that they did not fear Mr.

6

Davis.  **However,** their eyes and demeanor belied their words when they described how he spanked them with a bread board or his belt.  It appears to the Court in interviewing the boys that they have been instructed not to **say** anything negative about their present circumstances, perhaps out of fear.

. . .

The house in Virginia is older and is not in good condition.  At one time, twelve people shared the house, now only ten reside there, along with about seven house pets.

All five of [Rebecca's] children sleep on one mattress in the upstairs of this house, partly because they only have one mattress for the children to share, and partly to keep warm.

[Rebecca] and Mr. Davis share another mattress in this same room.  The owner of the house has asked them to vacate the home because of the unpaid rent, and there is no evidence that they have any place to live.

. . .

The Court does not make the decision to modify the parenting plan easily.  [Rebecca] obviously loves her children, and they love her, and their two younger **half-**brothers.  They also seem to do adequately in school, and presently appear to be physically healthy. However, the pattern of unpaid rent, unpaid bills, evictions in the middle of winter, substandard living conditions, and physical discipline are contrary to the best interests of the children.  These factors, and others in the evidence, combine to show that modification of the parenting plan is in the best interest of the children.

. . .

In the case at bar, the children's "present environment endangers seriously [their] physical, mental, moral, or emotional health and the harm likely to be caused by a change in environment is outweighed by its advantages to [them.]"  Section 40-4-219(1)(c), MCA.  We find the District Court did not err in modifying the primary physical custody of the children:  the

7

jurisdictional    prerequisite  found in § 40-4-219(1)(c), MCA, has been met.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Justice **Karla** M. Gray, dissenting.

I respectfully dissent from the Court's opinion. While I agree that § 40-4-219, MCA, applies to this petition to modify custody, I disagree that the jurisdictional requisites of that statute were met here. It is clear that, in resolving this case, the District Court believed that § 40-4-212, MCA, applied; it did add several findings directed to the § 40-4-219, MCA, standards, but those findings are somewhat nebulous and, to some extent, unsupported by the record. Because of the confusion over the applicable standard and the nature and content of the court's findings as they relate to § 40-4-219, MCA, I would remand this case to the District Court for redetermination.

At the outset, it is important to note that Terry filed his petition for modification **prior** to Rebecca's move to Virginia. The basis for the petition was the upcoming move. **Any** "changed circumstance" necessary as a foundation for a total change of the children's physical custody was met, in Terry's view, by the move itself. The District Court apparently agreed, finding that **"this** travel does represent a substantial change in the circumstances of the children." I disagree.

While changing the state of residence of the children may provide a sufficient foundation to modify visitation rights and associated costs, it is my view that such a change does not, in and of itself, meet the substantial change in circumstances requirement of § 40-4-419, MCA. It is not for the courts of Montana to negate a custodial parent's decision about where to live with her

9

children; only where those decisions produce an otherwise substantial change in circumstances can such a factor impact on a court's decision to modify physical custody of the children.

Nor does the record support the notion that the children's living circumstances were significantly changed in an adverse manner by the move. The fact is that Rebecca, her husband and the children lived in near poverty during their time in Havre. Rebecca's unemployment outside the home and motherhood of five children certainly did not change after the move, and the same is true of her husband's underemployment.

Moreover, the District Court's efforts to make findings sufficient to establish the serious endangerment standard contained in § 40-4-219, MCA, are not supported by the record. It is true that money was scarce, as it had been in Havre. It is also true that housing in Virginia was unlikely to be stable, as was also the case in Havre. It is also true that the children were sleeping on a mattress on the floor awaiting the family's furniture. These matters do not constitute serious endangerment.

Indeed, the court made findings which negate the serious endangerment standard. It found that the children were physically healthy. It also found that, after an initial period of adaptation to their new school, the children had perfect attendance records and good grades.

It is my view that the District Court's lengthy pronouncements about the dangers of kerosene heaters, which even this Court concedes were inappropriate as being totally unsupported by any

10

evidence, significantly and improperly influenced its approach to the serious endangerment standard of § 40-4-219, MCA. Without those pronouncements and the court's clearly substantial concern in that regard, there is little evidence to support the court's serious endangerment conclusion.

I would remand to the District Court for a redetermination of the petition to modify custody based on application of § 40-4-219, MCA.

_____
                    Justice

11

September 12, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


ROXANNE ROGERS
Montana Legal Services Association
P.O. Box 548
Havre, MT 59501

Patricia Jensen
RICE LAW OFFICE
P.O. Box 912
Havre, MT 59501-0912

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *D. Gallagher*
Deputy