No. 00-855

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 79

IN RE THE MARRIAGE OF

HERBERT W. OEHLKE,

              Petitioner/Appellant/Cross-Respondent,

    and

CARRI L. OEHLKE,

              Respondent/Appellee/Cross-Appellant.


APPEAL FROM:    District Court of the Ninth Judicial District,
                        In and for the County of Pondera,
                        The Honorable Marc G. Buyske, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

             Shari M. Gianarelli, Gianarelli Law Office, Conrad, Montana

        For Respondent:

             Kirk D. Evenson, Marra, Wenz & Johnson, Great Falls, Montana


                                  Submitted on Briefs: November 8, 2001

                                      Decided:  April 26, 2002

Filed:


_____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     The marriage of Herbert Oehlke (Herbert) and Carri Oehlke (Carri) was dissolved pursuant to a decree issued in October, 1996. As part of the dissolution, the parties entered into a Child Custody, Support, and Property Settlement Agreement, which designated Carri as the primary custodian of the couple's only child. On April 26, 2000, Herbert filed a Petition for Amendment to Parenting Plan. Following a hearing, the District Court denied Herbert's petition and also denied Carri's request for attorney's fees. Herbert appeals the court's denial of his petition to amend and Carri cross-appeals the court's denial of attorney's fees. We affirm.

¶2     The following issues are presented for our review:

1. Whether the District Court erred when it denied the father's petition to amend the parenting plan; and

2. Whether the District Court erred when it denied the mother's request for attorney's fees.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     Herbert and Carri were married in 1993, and have one minor child, a daughter, born in 1994. In 1996, Herbert and Carri sought dissolution of their marriage. As part of the dissolution, on September 6, 1996, Herbert and Carri executed a Child Custody, Support, and Property Settlement Agreement (Agreement).

¶4      Under the Agreement, Carri was designated the primary care giver during the school year, while in the summers their daughter would live with Herbert and also stay with him during agreed vacations. The Agreement provided that:

> Both Husband and Wife are fit and proper persons to be granted the joint care, custody and control of their minor child . . . however, at the time Wife completes her nursing studies, Wife intends, and Husband agrees that Wife shall have the primary custody of the minor child . . . taking the said minor child with her to her intended out-of-state residence in Minnesota. After Wife has completed her nursing studies and moved out of the State of Montana, Husband shall have physical custody for the summer school vacation, alternating holidays as contemplated below in the section entitled "Visitation" and as may be agreed upon and arranged by the parties.

The section concerning visitation provided that if either parent would be absent for more than seven days, the other parent had first preference to assume supervision of their daughter. Moreover, the visitation section of the Agreement provided that:

> Wife is further amenable to and agrees that Husband shall have extended visitation with the minor child . . . prior to enrollment in school, during Husband's off-season from the labor-intensive seasons for farming, generally being April through October. In the months from November through March, when Husband can make satisfactory arrangements as may be agreed upon by the parties, he shall have extended visitation and physical custody of the minor child.

¶5      The District Court found that the Agreement was not unconscionable and accordingly approved and adopted it in the divorce decree dated October 7, 1996. Concerning custody, the court concluded in the decree that the parents shall have joint custody "as provided in the . . . Agreement and subject to the provisions of said Agreement."

¶6      Following the divorce, the child primarily resided with Carri in Minnesota, and Herbert had visitation during some holidays, summer vacations, and various other times as

3

the parties agreed. In December of 1999, Carri contacted Herbert and told him their daughter wanted to spend more time with him, and that Carri, a registered nurse, had decided to return to school in a Nurse/Anesthetist Program to hopefully improve the hours she was working. Herbert picked up their daughter from Carri's in December with the understanding she would stay with him for an undetermined period of time. At the hearing, Herbert testified that it was not unusual for him to have their daughter for undefined periods of time. Carri understood the arrangement to be that the child would stay with Herbert through the school year and return with Carri to Minnesota in the summer.

¶7     In April of 2000, when Carri came to Montana to visit, Herbert approached her about changing the parenting plan so he would be the permanent primary physical custodian, with Herbert having custody during the school year and Carri having custody over the summer. By seeking designation as the primary physical custodian, Herbert sought to prevent Carri from shifting their child's residence back and forth. Carri did not agree to the change, and Herbert subsequently filed a petition to amend the parenting plan, since he was concerned Carri would not return their daughter at the end of the summer. At the end of the school year, the child returned to Minnesota.

¶8     On September 18, 2000, the District Court held a hearing on the petition where both parents, as well as others, testified. The court entered its Order Denying Request to Modify Parenting Plan on October 2, 2000. In its order, the District Court concluded the jurisdictional prerequisite of changed circumstances was absent and that it therefore was without authority to modify the parenting plan. The District Court also denied Carri's request

4

for attorney's fees based on its finding that Herbert's petition was not frivolous, vexatious, or meant to harass Carri.

## STANDARD OF REVIEW

¶9      When we review a district court's findings related to a modification of custody, the standard of review is whether those findings are clearly erroneous. *In re Paternity and Custody of A.D.V.*, 2001 MT 74, ¶ 8, 305 Mont. 62, ¶ 8, 22 P.3d 1124 ¶ 8. When findings upon which a decision is predicated are not clearly erroneous, we will reverse a district court's decision regarding modification of custody only where an abuse of discretion is clearly demonstrated. *A.D.V.*, ¶ 8 (citing *In re Marriage of Abrahamson* (1996), 278 Mont. 336, 340, 924 P.2d 1334, 1337).

## DISCUSSION

### Issue 1

¶10     **Did the District Court err when it dismissed the father's petition to amend the parenting plan?**

¶11     Herbert claims the District Court incorrectly required him to show a change of circumstances before it would consider his petition to modify the parenting plan, arguing that Herbert's petition sought only to make a *de facto* modification permanent, and did not seek to change the primary residence of their daughter. In the alternative, Herbert argues that he did demonstrate a sufficient change in circumstances to meet the jurisdictional threshold of § 40-4-219(1), MCA. Finally, Herbert argues that the District Court's findings are not supported

because the court improperly interpreted the Agreement when it concluded the Agreement contemplated transferring physical custody of the parties' daughter.

¶12 The finding of changed circumstances is a jurisdictional prerequisite, and without such a finding, a district court may not modify an existing custody arrangement. *In re Marriage of Syverson* (1997), 281 Mont. 1, 16-17, 20, 931 P.2d 691, 701, 702 (citing *In re Marriage of Johnson* (1994), 266 Mont. 158, 166, 879 P.2d, 689, 694); and *In re Marriage of Boyer* (1995), 274 Mont. 282, 286, 908 P.2d 665, 667. If a request for modification of a joint custody decree would have the effect of substantially changing the primary residence of the parties' children, the court, before engaging in modification, must first find that the requirements of § 40-4-219, MCA, have been met. *Syverson*, 281 Mont. at 20, 931 P.2d at 702.

¶13 We conclude Herbert's proposed amended parenting plan was not merely a *de facto* modification of the parenting plan. Herbert's amended plan would have the effect of substantially changing the primary residence of the child, and accordingly we conclude he must meet the jurisdictional threshold of § 40-4-219, MCA.

¶14 Under § 40-4-219, MCA, a court may proceed to modify a parenting plan if:

> it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child.

¶15 In its order, the District Court found that Herbert made "no allegation in his petition that circumstances have changed." The court also noted that, for the proposition that

6

circumstances had changed, Herbert relied only on the December 1999 arrangement, "loose though it was, to have the minor child reside with [him] rather than [Carri] for a period of time while [Carri] resolved pending job opportunities." The court noted the Agreement provided that Herbert "may have 'physical custody . . . as may be agreed upon and arranged by the parties, ' " and also cited the visitation provision that gave one of the parents first preference for supervising their daughter if the other parent would be absent for more than seven days. The court concluded these provisions were "flexible and reasonable."

¶16    Herbert argues that evidence introduced at the hearing was sufficient to demonstrate a change in circumstances. Herbert notes that his daughter was enrolled and doing well in school, had integrated into his family and developed significant relationships with his family and Carri's extended family who lived nearby. He also cites to concerns about his daughter's eating habits and possible eating disorder that he speculated stemmed from Carri's eating disorder. Finally, Herbert references that Carri was expecting a baby, planning to remarry, and continues to contemplate further schooling, as evidence of changed circumstances.

¶17    "Findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made." *Syverson*, 281 Mont. at 21-22, 931 P.2d at 703 (citation omitted). Moreover, a party seeking to modify a parenting plan pursuant to § 40-4-219, MCA, carries a heavy burden of proof. *In re Marriage of Gallagher* (1994), 266 Mont. 358, 361-62, 880 P.2d 1303, 1306 (citing *Johnson*, 266 Mont. at 166, 879 P.2d at 694) ("party

7

requesting modification under § 40-4-219, MCA, bears a heavy burden because the statute's policy is to 'preserve stability and continuity of custody for the children' ").

¶18    We conclude the District Court's findings are not clearly erroneous, and are supported by substantial evidence both from the Agreement and the testimony of the parents. The Agreement considered Carri's educational pursuits and also contemplated flexible shifts in custody arrangements as agreed between the parents. In addition, there was no evidence presented that the December 1999 arrangement was anything more than a temporary change in the child's residence. Moreover, at the hearing, Herbert agreed that the Agreement "addressed, that as a farmer there are certain times of the year when [he was] more busy, and, in fact, [he had] times when [he was] not busy, and if [Carri and Herbert] could work it out [their daughter] would come and stay with [him]."

¶19    The most serious allegation, that the child suffered from an eating disorder, was based solely on testimony from Herbert and his mother, and concerned one incident. Herbert presented no medical testimony, although the child had apparently seen a doctor. Carri and her mother testified about Carri's eating disorder, and offered unrefuted testimony that they would seek medical treatment for the child if they felt she had an eating problem.

¶20    Although the District Court did not directly address Herbert's contention that adequate evidence of changes in circumstances was presented at the hearing (i.e., integration into family, Carri's pregnancy and future plans, etc.), these facts do not compel the conclusion that the District Court abused its discretion.

¶21 We must give due regard to the opportunity of the trial court to judge the credibility of witnesses. *In re Marriage of Pearson*, 1998 MT 236, ¶ 51, 291 Mont. 101, ¶ 51, 965 P.2d 268, ¶ 51 (citing Rule 52(a), M.R.Civ.P.). "It is the duty and function of the District Court to resolve conflicts in evidence, and we will not substitute our judgment for that of the District Court on such matters." *Pearson*, ¶ 51 (citation omitted).

¶22 Therefore, we conclude the District Court's findings were not clearly erroneous and conclude there were no new facts that had arisen, nor were there facts unknown to the court at the time the plan was entered into, that compelled a finding of changed circumstances of the child. Because § 40-4-219, MCA, requires the district court to first find the existence of changed circumstances from the time of the original decree before it may modify an existing custody arrangement, we conclude the District Court did not err in refusing to modify the parenting plan.

¶23 Finally, Herbert argues that the District Court erred in its interpretation of the Agreement. We conclude the District Court did not err. The construction and interpretation of written agreements is a question of law. *In re Marriage of Holloway*, 2000 MT 104, ¶ 5, 299 Mont. 291, ¶ 5, 999 P.2d 980, ¶5 (citation omitted). Questions of law are reviewed *de novo* to determine if they are correct. *Holloway*, ¶ 5 (citation omitted).

¶24 Herbert argues that "the four corners of the document established that the parties clearly did not intend for the minor child to change residences in the middle of a school year." For this assertion, Herbert relies on the provision in the visitation section (See ¶ 4

herein) that indicates Herbert would have extended visitation prior to their daughter's enrollment in school.

¶25  However, we will not parse out provisions from the Agreement. When interpreting an agreement, it must be examined as a whole. Section 28-3-202, MCA (the whole of a contract is to be taken together so as to give effect to every part if reasonably practicable). Here, the Agreement's entire approach to custody and visitation was one of flexibility, including provisions addressing custody during Carri's continued schooling and if the custodial parent was going to be absent for longer than a week, as well as consideration for the times of the year when Herbert's work schedule allowed him more time to see their daughter. In addition, Herbert's testimony at the hearing, that it was not unusual for him to have their daughter for undefined periods, also indicates the parties' flexible approach to shifts in their daughter's residence. Moreover, the Agreement does not prohibit a transfer in custody during the months when the child is enrolled in school.

¶26  We conclude the District Court did not err in interpreting the Agreement, and also conclude that the District Court did not err in concluding there was not substantial evidence to satisfy the jurisdictional prerequisite in § 40-4-219(1), MCA. Accordingly, we conclude the District Court's findings were not clearly erroneous and that it did not abuse its discretion in denying the father's request to modify the parenting plan.

**Issue 2**

¶27  **Did the District Court err when it denied the mother's request for attorney's fees?**

10

¶28 On cross-appeal, Carri argues the District Court erred in denying her attorney's fees because of a provision in the Agreement that awards attorney's fees to the prevailing party in any action to modify or interpret the Agreement.

¶29 While it is true that under § 40-4-201(5), MCA, the terms of a separation agreement set forth in the decree are enforceable as contract terms, Carri did not seek attorney's fees pursuant to the Agreement in the District Court. In her Respondent's Opposition to Amendment to Parenting Plan, Carri requested attorney's fees pursuant to §§ 40-4-110 and 40-4-219, MCA, arguing that Herbert's petition was vexatious. Carri continued to assert that Herbert's petition was vexatious harassment in accordance with § 40-4-219, MCA, in a subsequent motion for continuance. At no time did Carri petition the District Court for attorney's fees pursuant to a provision in the Agreement, as she does now on appeal.

¶30 We "generally will not address either an issue raised for the first time on appeal or a party's change in legal theory on appeal because 'it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider.'" *In re Estate of Bradshaw*, 2001 MT 92, ¶ 33, 305 Mont. 178, ¶ 33, 24 P.3d 211, ¶ 33 (citation omitted).

¶31 We therefore will not consider Carri's cross-appeal concerning attorney's fees.

¶32 We affirm.

/S/ PATRICIA COTTER

We Concur:

/S/ JAMES C. NELSON

11

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice Jim Rice dissenting.

¶33 I respectfully dissent, finding that the District Court erred in the interpretation and application of the parties' Settlement Agreement.

¶34 The District Court held as follows:

> And though the minor child is now enrolled in school, the plan contemplated Petitioner having "extended visitation and physical custody of the minor child" prior to enrollment in school. Given these flexible and reasonable provisions . . . the jurisdictional prerequisite of changed circumstances does not exist in this matter at this time, and this Court is without authority to modify the parenting plan.

This statement is flawed on its face. The District Court recognized that the agreement's flexible visitation provisions applied only to the child's pre-school years, yet reasoned that these same provisions barred a finding of changed circumstances following the child's entry into school. To the contrary, at that point, the flexible visitation provisions had expired, and the child was residing with her mother in Minnesota for the entire school year pursuant to mandatory provisions of the agreement, which the parties completely altered by their conduct.

¶35 This Court cites no authority for overlooking the terms of the parties' agreement, offering only that "we will not parse out provisions from the Agreement." The Court reasons that the agreement "must be examined as a whole," and that the Agreement's "entire approach" was "one of flexibility." However, in so holding, the Court is condoning the District Court's misapplication of the specific provisions of the parties' negotiated

13

agreement, and the denial of Herbert's rightful opportunity to seek permanent modification of the agreement. Contrary to the Court's assessment, this agreement did not have an entire approach to flexibility. Some parts were flexible, but others were not, including the provision at issue here.

¶36 I would enforce the agreement as written and agreed, and reverse the District Court's erroneous interpretation. Finding that there was a change of circumstances which established the jurisdictional predicate for the District Court to consider modification of the plan, I would remand for a hearing to determine the child's the best interests.


/S/ JIM RICE