FILED

July 24 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0136

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 158

TENILLE M. HOOD,

       Petitioner and Appellee,

  v.

JOHN D. HOOD,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 05-202
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Garth S. McCarty, Garth McCarty Law Firm, PC, Glenwood Springs,
Colorado

      For Appellee:

           Jason S. Ritchie, Kyle A. Gray, Holland & Hart, LLP, Billings, Montana

Submitted on Briefs: April 4, 2012

Decided: July 24, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 John Hood appeals a decision of the District Court for the Thirteenth Judicial District, Yellowstone County, denying John's motion to amend the parties' parenting plan. We affirm.

¶2 John raises the following issue on appeal: Did the District Court err by denying John's Motion to Amend Parenting Plan? And, in support of this issue, John contends that the District Court abused its discretion by:

1. Interviewing the minor children *in camera*, over John's objection, and then supporting its ruling in large part on the information obtained during the *in camera* interview;

2. Deciding that the children had adjusted well to their home, school and community in Utah in the absence of supporting evidence;

3. Not requiring Tenille Hood to provide her medical records, and ruling that the mental and physical health of the parties was not an issue and was evenly balanced between the parties;

4. Not enforcing its March 23, 2009 order; and

5. Failing to rule that Tenille was not credible as a matter of law.

**Factual and Procedural Background**

¶3 The parties in this case have had a great deal of difficulty working out parenting and visitation arrangements even though they lived in the same city for several years following their divorce. Their relationship, as characterized by Tenille in her brief on appeal, has been "acrimonious in the extreme." At one time, the parties went so far as to

file cross-motions for orders of protection against each other. And, on several occasions throughout these proceedings, the District Court Judge expressed his frustration with the parties' failure to effectively communicate with each other over the parenting of their children. While there have been numerous motions and petitions filed by both sides in this matter, the following summary of facts will only detail the motions, petitions and court decisions necessary to explain the current proceedings.

¶4 John and Tenille were married in November 1999 in Billings, Montana. They have three girls and one boy ranging in age from 9 to 14 years old. During the marriage, Tenille was primarily responsible for taking care of the children while John worked. John and Tenille separated in 2004 and divorced in May 2005. Tenille was awarded primary custody of the children.

¶5 In 2006, John moved to modify the parties' parenting plan, but before a final decision was reached on that issue, Tenille notified the court and John that she intended to move to Utah with the children on or about August 15, 2008. John moved for an emergency show-cause hearing to determine whether the move to Utah would be in the children's best interests. This hearing was postponed several times at the request of Tenille or her counsel. On September 17, 2008, John filed a Motion for Contempt asserting that Tenille had refused to allow him visitation with the children since March 2008.

¶6 The District Court conducted hearings on the various pending motions on October 10 and December 18, 2008. During the hearings, Tenille testified that her parents were selling their house in Billings and moving to Utah, and that her parents'

support was so essential to her parenting that it was in the children's best interests for her and the children to accompany her parents to Utah. Tenille also testified that her brother and his family live in Tooele, Utah, and that she would be taking over the lease on her brother's house since he and his wife were planning to purchase a home of their own.

¶7 In addition, Tenille asserted that, after 12 years of being on public assistance, she intended to obtain her G.E.D. as soon as she moved to Utah, and that she planned to get a job. Tenille also told the court that her move to Utah was necessary because, after she obtained her G.E.D., she intended to return to school to obtain a degree in a field that was not taught at the schools in Montana.

¶8 The District Court rendered its Decision on March 24, 2009, wherein the court noted that both parties have "checkered pasts" regarding substance abuse, but that substance abuse was not currently an issue for either party. The court also noted that even though the best thing for the children would be for both parents to live in the same community, there was good reason for Tenille to move to Utah where her family could provide assistance with the children while Tenille completed her education and got a job. The court stated, however, that, as of the hearing, Tenille had no job, was on public assistance, and was not going to school, and that if that was to be her lifestyle, she should stay in Billings where the children could have more contact with their father.

¶9 Nevertheless, the court stated that it would not prevent Tenille from moving to Utah with the children, and that it intended to retain jurisdiction to require Tenille to live in Billings unless she undertakes to complete her education and get a job. The court ordered that a parenting plan be prepared showing Tenille as the primary residential

parent living in Utah, and that John should have reasonable visitation including six weeks of visitation with the children during the summer.

¶10 Tenille and the children moved to Utah in April 2009. But, instead of taking over the lease on Tenille's brother's house as she had told the court, Tenille and the children lived with Tenille's brother and his family for eight weeks until Tenille obtained a home of her own.

¶11 On June 25, 2009, the District Court adopted Tenille's proposed parenting plan. The court noted, however, that the parenting plan should be modified to provide for additional reasonable visitation to which the parties shall from time to time mutually agree, and to permit the parties to mutually agree to modify visitation times and travel arrangements. Thus, the court ordered that a final parenting plan be prepared and submitted.

¶12 John began filing motions and supplements to motions in October 2009 to hold Tenille in contempt of court and to reopen the matter regarding the parties' parenting plan contending that Tenille failed to abide by the parenting plan and continued to frustrate John's contact with the children. On March 24, 2010, John filed a Motion to Amend Parenting Plan wherein he asserted that after living in Utah for almost one year and contrary to Tenille's promises to the court, Tenille failed to get her G.E.D., failed to get a job, and failed to enroll in college.

¶13 In addition, John noted that the other reasons Tenille gave for moving to Utah had also proved to be unfounded. Tenille's parents did not move to Utah as Tenille had represented to the court, and, not only did Tenille not take over the lease on her brother's

house in Utah, Tenille's brother and his family moved back to Billings. Thus, John asked the court to require Tenille and the children to move back to Billings, and to require that the children spend equal time with each parent, or, if the court allowed Tenille to remain in Utah, to grant John primary residential custody of the children in Billings.

¶14 In her response to John's motion, Tenille stated that she did obtain her G.E.D. and has enrolled in college, but that she does not have a job and still receives public assistance. She also stated that her parents did not move to Utah because they were unable to sell their home in Billings. Tenille pointed out that the children are thriving in their new home, school and community in Utah, and that it would not be in their best interests to force them to return to Billings.

¶15 The District Court held several days of hearings in this matter in July, August, September, and December 2010, wherein both parties offered testimony and exhibits. In addition, the court interviewed three of the parties' children in chambers. After both parties submitted proposed findings of fact and conclusions of law, the court entered its Decision on Modification on February 15, 2011.

¶16 In its decision, the District Court weighed the factors set forth in § 40-4-212, MCA, regarding the best interests of the children, and determined that because Tenille has always been the primary residential parent, she should continue as the primary residential custodian of the children. Consequently, the court denied John's Motion to Amend Parenting Plan. In reaching this decision, the court pointed out that although Tenille "underperformed and neglected to follow through on the things she asserted were the basis for her move to Utah," it would not require her to move back to Billings, but

6

that she should seriously consider doing so to facilitate visitation. The court further stated that "unless the intent is to frustrate visitation, anyone, including parents, can travel and live wherever they want."

¶17   John appeals the District Court's Decision on Modification.

## Standard of Review

¶18   We review the findings of fact underlying a district court's decision to modify a parenting plan to determine whether those findings are clearly erroneous. *In re Marriage of D'Alton,* 2009 MT 184, ¶ 7, 351 Mont. 51, 209 P.3d 251 (citing *In re Marriage of Oehlke*, 2002 MT 79, ¶ 9, 309 Mont. 254, 46 P.3d 49). If the underlying findings are not clearly erroneous, then we will overturn the district court's decision only if there is a clear abuse of discretion. *D'Alton*, ¶ 7.

## Discussion

¶19   *Did the District Court err by denying John's Motion to Amend Parenting Plan?*

¶20   John argues on appeal that the District Court's decision was wholly unsupported by the evidence, and that it acted arbitrarily at various times during the proceedings culminating with its "arbitrary" conclusion that Tenille should be allowed to remain in Utah with the children despite her failure to comply with the court's previous decision. Tenille argues on the other hand that John failed to meet any of the burdens of proof that Montana law imposes on him in order to receive the relief he requested, namely modification of the parenting plan. She also argues that John fails to address the primary issue in this case—the best interests of the children. However, John contends that it is not his burden to persuade this Court how the children's best interests are best served.

¶21 A trial court may

> in its discretion amend a prior parenting plan if it finds, upon the basis of
> facts that have arisen since the prior plan or that were unknown to the court
> at the time of entry of the prior plan, that a change has occurred in the
> circumstances of the child and that the amendment is necessary to serve the
> best interest of the child. . . .

Section 40-4-219(1), MCA. Moreover, this Court has repeatedly held that a party seeking to modify a parenting plan pursuant to § 40-4-219, MCA, carries a heavy burden of proof. *Oehlke*, ¶ 17 (citing *In re Marriage of Gallagher*, 266 Mont. 358, 361-62, 880 P.2d 1303, 1306 (1994)); *see also D'Alton*, ¶ 11.

¶22 A finding of changed circumstances "is a jurisdictional prerequisite, and without such a finding, a district court may not modify an existing custody arrangement." *Oehlke*, ¶ 12 (citing *In re Marriage of Syverson*, 281 Mont. 1, 16-17, 20, 931 P.2d 691, 701, 702 (1997)). In the instant case, the District Court determined that Tenille's underperformance in Utah was a change in circumstances of the children, thereby meeting one factor of the test set forth in § 40-4-219, MCA.

¶23 The other factor of this test requires an analysis of whether the parenting plan modification is necessary to serve the best interest of the children. "A district court is required to determine child custody matters in accordance with the best interests of the child, considering a variety of statutory factors." *In re Marriage of Guffin*, 2009 MT 169, ¶ 7, 350 Mont. 489, 209 P.3d 225 (citing § 40-4-212, MCA; *Czapranski v. Czapranski*, 2003 MT 14, ¶ 11, 314 Mont. 55, 63 P.3d 499).

¶24 Moreover, we have pointed out that child custody cases often present a district court with difficult decisions, and we must presume that the court carefully considered

8

the evidence and made the correct decision since the district court sits in the best position to evaluate the best interest of the child. *In re N.S.*, 2011 MT 98, ¶ 18, 360 Mont. 288, 253 P.3d 863 (citing *Toavs v. Buls*, 2006 MT 68, ¶ 13, 331 Mont. 437, 133 P.3d 202).

¶25 In its Decision on Modification, the District Court weighed the factors set forth in § 40-4-212, MCA, as they related to the best interests of the children in this case, and found the following:

(a) The wishes of the parents – evenly balanced here.

(b) The wishes of the children – the children have a good relationship with both parents. They are happy and well adjusted (in spite of the short comings of their parents). They like their school, friends, home and community in Utah. They like their Dad and Billings, too, and mostly get along well with him and his fiancé (live-in fiancé of three years with marriage contemplated in August, 2011) but find Dad's home a little crowded: Dad and his four children, fiancé and her two children. On balance the children of the parties favor staying in Utah. This factor is a little in favor of Mom.

(c) Interaction and interrelationship of the children with their parents, siblings, and others. These four children get along well with one another and both parents and Dad's fiancé and her children. However, on balance, they favor Mom's residence in Utah. This factor also favors Mom but is, in this case, not much different than the preceding factor.

(d) Children's adjustment to home, school and community. Again, this is similar to preceding factors but does favor Mom in Utah. These children are well adjusted to home, school and community in Utah but would probably do as well in Billings.

(e) Mental and physical health of all involved. There are no issues here and this factor is evenly balanced.

(f) Physical abuse or threat of physical abuse – any such that may have occurred between the parents in the past is now remote and no longer an issue. There has been no physical abuse of the children. This factor is now evenly balanced.

(g) Chemical dependency – no issue – evenly balanced.

(h) Continuity and stability of care – Mom has been the primary care provider for many years. This factor favors her.

(i) Developmental needs of children – This factor is evenly balanced. The parents have been and are (with some disagreement, of course) adequately addressing these needs.

(j) Birth-related costs – not an issue – evenly balanced.

(k) Child support – not an issue – evenly balanced.

(l) Frequent and continuing contact with the children – given that this is a long distance parenting arrangement, the non-residential parent of school-age children is necessarily shorted on visitation. This factor favors Dad.

(m) Adverse effects on the children from continuous and vexatious Parenting Plan amendment action. Even if the frequency of litigation in this case was viewed as continuous and/or vexatious, the litigation seems to have had no adverse effects on the children, at least not yet. This factor is evenly balanced.

¶26 The District Court also found that there were other applicable factors in determining the best interests of the children. To that end, the court pointed out that

Dad is a hard worker, somewhat rigid and less flexible than Mom. Mom is oriented to the children, does not work (though she does volunteer work) and lives off the charity of her fellow citizens. In Aesop's fable, he is more akin to the ant and she the grasshopper.

¶27 On appeal, John raises five arguments relating to the District Court's findings and to the denial of his motion to amend the parenting plan. He asserts that the District Court abused its discretion: (1) by interviewing the parties' minor children *in camera*; (2) by determining that the children had adjusted well to their home, school and community in Utah in the absence of supporting evidence; (3) by not requiring Tenille to provide her

10

medical records; (4) by not enforcing its March 23, 2009 Order; and (5) by failing rule

that Tenille was not credible as a matter of law. We will address each of these issues in

turn.

*1. Interviewing the parties' minor children* in camera

¶28 John asserts that the Judge wrongly interviewed three of the parties' four children

to ascertain whether they wished to continue to live in Utah with Tenille or to return to

Montana to live with John. John also claims that he was denied the right to confront the

witnesses against him when his counsel was not allowed to question the children.

¶29 Tenille points out that it was John who originally filed a motion asking the Judge

to conduct the interviews of the children, and that John changed his mind after his expert

witness testified that it would put the children "more in the middle." Even so, Tenille

asserts that it was because John continued to attempt to testify about the wishes of the

children that the Judge decided to interview them in chambers.

¶30 Section 40-4-214(1), MCA, places the decision to interview children in the

discretion of the court, not the parties:

> The court may interview the child in chambers to ascertain the
> child's wishes as to residence and parental contact. The court may permit
> counsel to be present at the interview. The court shall cause a record of the
> interview to be made and to be part of the record in the case.

In addition, we have stated that while "it is often important for the judge to discover the

attitudes and wishes of the child," "[n]othing in § 40-4-214, MCA, requires the court to

give the parties an opportunity to cross-examine the child." *N.S.*, ¶ 38 (quoting *Matter of*

*M.L.H.*, 220 Mont. 288, 292-93, 715 P.2d 32, 34-35 (1986)).

11

¶31 Here, the judge recorded his interview with each child and made it a part of the record in this case as required by § 40-4-214, MCA. We hold that the court did not abuse its discretion when it interviewed the children in chambers, or when it refused to allow John's counsel to cross-examine the children.

*2. Children's adjustment to their home, school and community in Utah*

¶32 John asserts that there was a lack of evidence in the record to support the District Court's conclusion that the children have adjusted well to their home, school and community in Utah. He complains that Tenille failed to submit the children's report cards or school records to support her contention that since moving to Utah, the children are doing better in school, and that their grades and behavior have improved. However, John has failed to proffer any evidence to contradict Tenille's assertions. And, in their *in camera* interviews with the Judge, three of the children reported that they liked their school, friends, home and community in Utah. Consequently, we hold that the District Court did not abuse its discretion by finding that the children "are happy and well adjusted" and that they "like their school, friends, home and community in Utah."

*3. Tenille's medical records*

¶33 John complains that Tenille failed to disclose her medical records despite the District Court's order to do so. However, John admitted in his brief on appeal that he wanted the medical information to attack Tenille's credibility regarding the issue of whether she could have obtained employment in Utah.

¶34 Side issues unrelated to the best interest of the child are irrelevant and cannot support modification of a parenting plan. *Marriage of Guffin v. Plaisted-Harman*, 2010

12

MT 100, ¶¶ 31-33, 356 Mont. 218, 232 P.3d 888. Therefore, we hold that the District Court was correct in finding that there were no issues involving the mental and physical health of the parties, and that this factor was evenly balanced.

*4. Enforcing the court's March 23, 2009 Order*

¶35 John argues that the District Court failed to enforce its March 23, 2009 Order when it did not require Tenille to move back to Billings. John states in his reply brief that Tenille was allowed to move to Utah only under specific conditions defined by the District Court's Order. He contends that Tenille has willfully defied that Order for the past three years. And, although John argues that this issue does not implicate Tenille's fundamental right to travel, we disagree.

¶36 We have noted previously that

> "the custodial parent who bears the burdens and responsibilities of raising the child is entitled, to the greatest possible extent, to the same freedom to seek a better life for herself or himself and the children as enjoyed by the noncustodial parent . . . [but that] . . . the custodial parent's freedom is qualified by the special obligations of custody, the state's interest in protecting the best interests of the child and the competing interests of the noncustodial parent."

*Matter of Custody of D.M.G.*, 1998 MT 1, ¶ 21, 287 Mont. 120, 951 P.2d 1377 (quoting *In re Marriage of Cole*, 224 Mont. 207, 213, 729 P.2d 1276, 1280 (1986)).

¶37 Both the United States Supreme Court and this Court have recognized that the right of interstate travel is a basic constitutional freedom. *D.M.G., ¶* 12 (citing *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 254, 94 S. Ct. 1076, 1080 (1974)). While this right is not mentioned in the federal constitution, the Supreme Court has determined that "it is a right so fundamental and elementary that it was conceived from the beginning

13

'to be a necessary concomitant of the stronger Union the Constitution created.' " *D.M.G.*, ¶ 12 (quoting *United States v. Guest*, 383 U.S. 745, 758, 86 S. Ct. 1170, 1178 (1966)).  The Supreme Court described it as the right "to migrate, resettle, find a new job, and start a new life."  *D.M.G.*, ¶ 12 (quoting *Shapiro v. Thompson*, 394 U.S. 618, 629, 89 S. Ct. 1322, 1328 (1969), *overruled on other grounds, Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347 (1974)).

¶38    The Supreme Court also determined that because the right of interstate travel is fundamental, a classification which operates to penalize those persons who exercise this right must be justified by a compelling state interest.  *D.M.G.*, ¶ 12 (citing *Memorial Hospital*, 415 U.S. at 258, 94 S. Ct. at 1082).  Similarly, this Court stated:

> "We believe that furtherance of the best interests of a child, by assuring the maximum opportunities for the love, guidance and support of both natural parents, may constitute a compelling state interest worthy of reasonable interference with the right to travel interstate.  We caution, however, that any interference with this fundamental right must be made cautiously, and may only be made in furtherance of the best interests of the child.  To that end, we require the parent requesting the travel restriction to provide sufficient proof that a restriction is, in fact, in the best interests of the child."

*D.M.G.*, ¶ 22 (quoting *Cole*, 224 Mont. at 213, 729 P.2d at 1280-81) (internal citations omitted).

¶39    In this case, Tenille argues that John bases the purported error on this issue solely on the argument that Tenille should be punished for underperforming on her commitments since moving to Utah.  She maintains that in making this argument, John has failed to show how it is in the best interests of the children to uproot them and force them to move back to Montana.  Tenille also points out that although she did not do so in

the time frame that she originally related to the District Court, she obtained her GED in March 2010, and she enrolled in classes at Utah State University in May 2010.

¶40 We conclude that John failed in his burden to prove that the best interests of the children would require Tenille to relocate to Billings, and we hold that the District Court did not abuse its discretion in refusing to interfere with Tenille's fundamental right to travel.

### 5. Tenille's credibility

¶41 John argues that the District Court abused its discretion by ignoring the issue of Tenille's credibility in the face of substantial and convincing evidence of her untruthfulness. John further argues that the children's best interests are not served by allowing them to live with Tenille who John contends sets a terrible example for the children as she is chronically unemployed and on public assistance.

¶42 The credibility of witnesses is a matter of fact left to the discretion of the trial court, not a matter of law. "The district court determines the credibility of the witnesses and the weight assigned to their respective testimony." *N.S.*, ¶ 25 (citing *Kulstad v. Maniaci*, 2009 MT 326, ¶ 52, 352 Mont. 513, 220 P.3d 595; *In re Marriage of McKenna*, 2000 MT 58, ¶ 17, 299 Mont. 13, 996 P.2d 386). We will not substitute our judgment for that of the district court on such matters since it is the duty and function of the district court to resolve conflicts in the evidence. *Oehlke*, ¶ 21 (citing *In re Marriage of Pearson*, 1998 MT 236, ¶ 51, 291 Mont. 101, 965 P.2d 268).

## Conclusion

¶43    We noted previously in this Opinion that a party seeking to modify a parenting plan pursuant to § 40-4-219, MCA, carries a heavy burden of proof. *Oehlke*, ¶ 17 (citing *Gallagher*, 266 Mont. at 361-62, 880 P.2d at 1306); *see also D'Alton*, ¶ 11.  We conclude that in this case, John failed in his burden to prove that the best interests of the parties' children would be better served by requiring Tenille to relocate to Billings or, if she refused to do so, by granting primary physical custody of the children to John.

¶44    Accordingly, we hold that the District Court did not err in denying John's Motion to Amend Parenting Plan.

¶45    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE