DA 12-0229

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 216N

JOHN W. CLARK,

      Plaintiff and Appellant,

  v.

DANA SZEGEDY,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Tenth Judicial District,
                 In and For the County of Fergus, Cause No. DV-11-41
                 Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Craig R. Buehler, Attorney at Law, Lewistown, Montana

      For Appellee:

          Robert E. LaFountain, Attorney at Law, Billings, Montana

                Submitted on Briefs:  September 12, 2012

                           Decided:  October 2, 2012

Filed:

                          _____
                                   Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      John Clark appeals the Tenth Judicial District Court's division of assets between him and his former live-in girlfriend, Dana Szegedy. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      Dana Szegedy and John Clark began living together as an unmarried couple in August 2008 in Grass Range, Montana. They both performed many of the ranch and farm duties associated with Joe Delaney's ranch where John worked before meeting Dana. Such duties included but were not limited to moving cows, vaccinating cattle, feeding herds, fencing, calving, and branding. Additionally, Dana trained horses. The couple kept some of their earnings in separate personal accounts but also co-mingled earnings in joint checking and savings accounts. After living together for more than two and one-half years, the couple experienced a bitter break-up in early April 2011 and disagreed on how to distribute their accumulated assets. John filed suit seeking return of many items he alleged Dana had wrongfully taken when she left.

¶4      In May 2011, the District Court conducted a hearing to address John's request for a temporary restraining order (TRO) prohibiting Dana from removing any disputed items from Fergus County. Without the vehicle and horse trailer to which John claimed she

2

was not entitled, Dana could not move to Billings to work as a horse trainer. At this hearing, the court also addressed Dana's motion for a TRO against John in which she requested that John be prohibited from disposing of her personal possessions and her share of jointly-owned possessions.

¶5 Both John and Dana testified at the hearing explaining the origin of and payment for some of the possessions accumulated during their relationship including vehicles, horses, stock trailers, and cash. The parties disagreed as to how much Dana contributed to the ranch work and whether the possessions were acquired primarily with John's earnings. They each claimed to have paid joint expenses from their personal checking accounts both before and after their joint account had been established.

¶6 At the conclusion of the May show cause hearing, the District Court awarded Dana $4,000 cash, representing one-half of the balance of the joint bank account John had testified contained $8,000, and temporary use of the 2001 pickup truck the couple possessed. The court allowed Dana to take the truck to Billings for work purposes, pending trial on the division of assets. Both parties were instructed to return each other's personal property, including property owned individually before their relationship began.

¶7 In October 2011, the court held a nonjury trial on the division of assets. The parties presented conflicting evidence about many of the disputed items. Before the court issued its order, John requested another hearing pertaining to the value of the 2001 truck the court had allowed Dana to use after the couple separated. The truck was being returned to John and the parties disputed the value and condition of the vehicle at that time. This hearing was held in February 2012.

¶8    The District Court subsequently weighed the evidence, the credibility of the witnesses, and the needs of the parties and divided the assets in a manner allowing both parties to continue pursuing their individual livelihoods.  John appeals, arguing that Dana unfairly received two-thirds of the joint assets.

## ISSUE

¶9    Did the District Court err in the distribution of property between the parties?

## STANDARD OF REVIEW

¶10    We review a district court's findings of fact regarding an equitable division of assets to determine whether the findings are clearly erroneous.  Findings are clearly erroneous if:  (1) they are not supported by substantial evidence; (2) the district court misapprehended the effect of the evidence; or (3) the district court made a mistake.  We review a district court's conclusions of law to determine whether the conclusions are correct.  If the findings are not clearly erroneous, then the court's division of property will be affirmed unless there is an abuse of discretion.  *In re Caras*, 2012 MT 25, ¶ 18, 364 Mont. 32, 270 P.3d 48.

## DISCUSSION

¶11    John claims Dana received $31,000 of their assets, including:

| | |
|---|---|
| Titan stock trailer | $12,000 |
| Horse named Badger | 6,000 |
| Horse named Cody | 5,000 |
| Two fillies | 1,000 |
| Two horse blankets | 200 |
| Computer | 600 |
| Round Pen | 2,200 |
| Cash | 4,000 |

4

He asserts the court awarded him the following, worth only $15,100:

| | |
|---|---|
| 2001 pickup truck | $3,000 |
| 1993 pickup truck | - 0 - |
| Horse named Beaver | 6,000 |
| Horse named Cougar | 1,500 |
| Two horse blankets | 200 |
| Hay feeder | 400 |
| Cash | 4,000 |

¶12    As noted above, the District Court heard considerable evidence pertaining to how much damage the 2001 truck had received while the couple was together versus how much damage had occurred during the six months Dana had possession of it following the couple's separation.  John claimed the truck was worth only $2,500 to $3,000 when Dana returned it, and not $12,500, as Dana claimed in October 2011.  The court received exhibits, however, that indicated the truck had a value between $6,950 and $12,860.  While the court did not specify a precise value for the truck when it awarded it to John, the court did note that the majority of mileage and damage had occurred during the time the couple was together, i.e., before Dana's October 2011 attributed value.

¶13    Additionally, John's listed awarded assets did not include a horse named Trigger valued at $1,500 which John received in the distribution.  More importantly, however, his list did not include a substantial amount of cash that had been in the couple's joint account one week before the couple broke up.  Dana testified that the joint account contained approximately $18,000 on April 1, 2011.  The record reveals the account actually contained $18,636 on that date.  Dana left without withdrawing any cash on April 7, 2011.  By April 13, she claimed the account had an approximate $14,500 balance, and by April 20, the account was closed.

5

¶14 John, on the other hand, testified that at some point in April, he withdrew $5,000, leaving a balance of approximately $7,000 or $8,000 that he subsequently transferred to his personal account. The court ordered John to give $4,000 of this $8,000 balance to Dana. John then reported to the court that he only had $3,000 left in his account. The court, nonetheless, let the order of payment of $4,000 to Dana stand. It is apparent that there is a substantial disparity between the $18,636 balance seven days before Dana left and the balance in the account at the time it was closed. The court questioned both John and Dana about these funds, and while not expressly allocating those funds to John, the court did not require John to pay Dana any funds other than the $4,000 it had ordered paid to her at the TRO hearing. As a result, John may have received somewhat more cash than did Dana.

¶15 As we have stated previously, a court's distribution of assets may be equitable without being equal. *In re Marriage of Harris*, 2006 MT 63, ¶ 17, 331 Mont. 368, 132 P.3d 502 (citations omitted). Moreover, it is the province of the district court to determine the credibility of the witnesses and the weight assigned to their respective testimony. We will not substitute our judgment for that of the district court on such matters. *Hood v. Hood*, 2012 MT 158, ¶ 42, 365 Mont. 442, 282 P.3d 671. We conclude that substantial evidence supports the court's division of assets and that the distribution was equitable.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The

6

District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶17 We affirm.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ BETH BAKER
/S/ JIM RICE